IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TAMMIE MILLER FUHR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV478 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tammie Miller Fuhr, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income on June 10, 2010, alleging a disability onset date of January 1, 2007, which she later amended to April 1, 2010. (Tr. at 14, 48, 136-43.)[1] With respect to her claim for Disability Insurance Benefits, she had acquired sufficient coverage to remain insured

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #8].

through June 30, 2011, her date last insured. Her applications were denied initially and upon reconsideration. (Tr. at 51-62, 70-73.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 74-78.) Plaintiff, represented by an attorney, appeared and testified at the subsequent hearing on December 11, 2012. (Tr. at 14, 27-50.) Following the hearing, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 14-26), and on May 10, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to

the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: depressive disorder, status post carpal tunnel release and ganglion cyst removal on right, right knee degenerative joint disease, history of left frozen shoulder, seizures, and alcohol abuse in remission. (Tr. at 16.) The ALJ found at step three that none of these impairments, considered singly and in combination, met or equaled a disability listing. (Tr. at 17-18.) Therefore, he assessed

---

be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

Plaintiff's RFC and determined that she could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations to

> occasional postural movements, but no overhead work with the left upper extremity and frequent handling. The claimant [also] must avoid all work hazards such as unprotected heights and dangerous machinery. The claimant can perform simple[,] routine[,] repetitive tasks.

(Tr. at 19.) At step four of the analysis, the ALJ found that Plaintiff's past relevant work exceeded her RFC. (Tr. at 24.) However, based on information provided by an impartial vocational expert, the ALJ concluded at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy and therefore was not disabled. (Tr. at 25-26.)

Plaintiff now contends that the ALJ failed to properly evaluate her credibility with respect to her seizure disorder allegations, and thus failed to properly evaluate the impact of her seizure disorder on her RFC. (Pl.'s Br. [Doc. #11] at 7.) In particular, Plaintiff challenges the ALJ's characterization of Plaintiff's seizures as "infrequent" and "generally controlled" throughout the time period at issue in this case, despite Plaintiff's testimony that she continued to experience breakthrough seizures at least twice per month. (See Tr. at 20, 43.) Plaintiff acknowledges that "the medical evidence supports a finding that [her] seizures were significantly reduced in frequency between her April 2010 amended alleged onset date of disability and June 2011." (Pl.'s Rep. Br. [Doc. #14] at 1.) However, she argues that "the medical evidence also indicates that [Plaintiff's] seizures increased in frequency during the 17-month period between June 2011 and the December 2012 disability hearing." (Id. at 2.) By allegedly failing to "recognize and acknowledge this worsening," Plaintiff contends that

6

the ALJ "underestimated the impact" of Plaintiff's seizure disorder on her RFC. (Pl.'s Br. at 7.)

Defendant counters that the only evidence indicating increased frequency of seizures after June 2011 consists of Plaintiff's "own self-reports to various physicians," and that "[t]here is no objective evidence that Plaintiff was actually experiencing seizures with increased frequency, severity, or daytime effects." (Def.'s Br. [Doc. #13] at 10.) To refute these assertions, Plaintiff cites an October 2011 questionnaire completed by her treating primary care physician, Dr. Luis Insignares, and the treatment notes of Dr. Leslee Hudgins, a neurologist who completed a consultative examination of Plaintiff in December 2012. (Pl.'s Resp. Br. at 2-3 (citing Tr. at 912-15, 916-19).) In particular, Dr. Insignares noted that, in October 2011, Plaintiff was averaging 2 grand mal and/or petit mal seizures per month, and that these events could be triggered by stress. (Tr. at 912-13.) However, when asked the dates of Plaintiff's last three seizures, Dr. Insignares noted that the most recent was "2 weeks ago," the seizure prior to that was "2 months ago," and the date for the seizure prior to that was left blank. (Tr. at 912.) Dr. Insignares also stated that the seizures were "controlled on Dilantin" with a "Neurology Evaluation pending" and "Dilantin level pending." (Tr. at 913-14). Dr. Insignares nevertheless concluded that as a result of her impairment, Plaintiff would need 15-20 minute breaks every hour during an 8-hour workday, that she was incapable of even low stress jobs, and that she was likely to be absent from work 3 days per month. In the subsequent neurology evaluation, Dr. Hudgins described Plaintiff's seizures as "simple vs. complex partial seizures," and indicated that Plaintiff's "last known seizure was approximately 2 weeks ago" and that "[s]he can have several breakthrough seizures,

7

which likely do not progress to generalized tonic clonic events each month." (Tr. at 918.) Dr. Hudgins noted that the seizures occurred "[m]ore frequently in the late evening and/or during sleep," and that the "[e]tiology for more recent events is likely secondary to difficulty in controlling [anti-epileptic drug] levels as well as sequelae to traumatic brain injury in the past." (Tr. at 916, 918.) Plaintiff contends that these medical evaluations support her testimony and should have been given controlling weight as opinions of treating physicians.

In considering this contention, the Court notes that, in his determination, the ALJ specifically considered Dr. Hudgins' evaluation, and the ALJ noted that with respect to that evaluation, "[a]lthough the claimant reported that she had several breakthrough seizures a month and the last seizure being two weeks previous, treatment records failed to support this frequency of seizure activity." (Tr. at 21-22 (citing Tr. at 916-18).) Similarly as to Dr. Insignares, the ALJ specifically considered the questionnaire from Dr. Insignares, but accorded the opinion little weight. (Tr. at 24.) Thus, the ALJ specifically considered the evidence from Dr. Hudgins and Dr. Insignares, and chose not to rely on it to the extent that it was not consistent with the treatment records and was based on Plaintiff's self-reports, which the ALJ found less than fully credible. (Tr. at 22.) See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (explaining that a treating source's opinion is only entitled to controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"); see also Mastro, 270 F.3d at 178 (upholding ALJ's decision not to give controlling weight to a treating physician's opinion that was based on the subjective complaints of the claimant); Larew v. Astrue, No. 5:13CV69, 2015 WL 132636 (W.D. Va. Jan. 9, 2015) ("As the Fourth

8

Case 1:14-cv-00478-JAB-JEP Document 15 Filed 07/30/15 Page 8 of 10

Circuit has held, even a treating physician's opinion based on self-reported symptoms is a legitimate ground to reject it."). The ALJ's weighing of the information from Dr. Insignares and Dr. Hudgins was fully explained and was supported by substantial evidence.

Ultimately, Plaintiff's challenge is to the ALJ's credibility determination regarding the extent and impact of her seizures. However, where the ALJ has considered the relevant factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is not this Court's role "to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." Hancock, 667 F.3d at 472 (quotation omitted). In this case, the ALJ made specific findings in support of his credibility determination (Tr. at 22), and that credibility determination is supported by substantial evidence.

Finally, the Court also notes that a review of the administrative decision reveals that the ALJ specifically considered Plaintiff's reports of breakthrough seizure activity during the period in question, but noted that, "even though [Plaintiff] reported breakthrough seizure of twice a month to her treating neurologist," these seizures (1) "occurred primarily in [Plaintiff's] sleep," (2) never caused her to present for medical treatment after December 2010, (3) did not prevent her from living by herself on a houseboat,[4] and (4) did not prevent her from attending "to her own self care needs and household chores." (Tr. at 24.)

---

[4] At the hearing, Plaintiff testified that "I live by myself, and stay with family, but mainly by myself," and further testified that she lived on a friend's houseboat and that her sister lived nearby at the same marina. (Tr. at 33-34, 45.) She also testified that she had been staying with a niece recently while she adjusted to new medication. (Tr. at 46.) The ALJ noted that Plaintiff "lived alone in a boat at a marina on the water" (Tr. at 22, 24), which is consistent with Plaintiff's testimony and the other evidence in the record (Tr. at 208, 813, 879), and the ALJ's determination is supported by substantial evidence.

9

Nevertheless, the ALJ restricted Plaintiff from "all work hazards such as unprotected heights and dangerous machinery" in light of her seizure disorder. (Tr. at 19.) The ALJ thus took Plaintiff's contentions and all of the medical evidence into account in making his determination, and the Court concludes that substantial evidence supports the ALJ's RFC assessment.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 30th day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge